```
    IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

      MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


UNITED STATES OF AMERICA    )
                            )     CRIMINAL ACTION NO.
    v.                      )        2:12cr232-MHT
                            )            (WO)
MARDEDEUS MACK              )
```

OPINION AND ORDER

This federal court is presented with the question whether defendant Mardedeus Mack should be continued on conditional release. For reasons that will be explained, the court holds that, if the State of Alabama Board of Pardons and Paroles agrees to his continued release despite alleged parole violations, this court will agree to his continued conditional release as well, albeit subject to certain additional conditions designed to prevent further misconduct.


I.  Background

In 2012, Mack was charged in a five-count federal indictment with possessing crack cocaine with intent to

distribute, in violation of 21 U.S.C. § 841(a)(1); possessing a firearm in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. § 924(c); possessing marijuana, in violation of 21 U.S.C. § 844(a); and possessing a firearm and ammunition as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1).

Based upon medical evidence that Mack has borderline intellectual functioning, or moderate mental retardation, and, at that time, suffered from auditory hallucinations and paranoid behavior consistent with general psychosis or schizophrenia, this court found that he had a significant intellectual disability and was not competent to stand trial. United States v. Mack, 2013 WL 4874138, at *3 (M.D. Ala. Sept. 12, 2013) (Thompson, J.); United States v. Mack, 2014 WL 2109860, at *2 (M.D. Ala. May 20, 2014) (Thompson, J.).  The court later found that there was not a substantial probability that he could be restored to competency.

2

Id. at *3.  After the Federal Bureau of Prisons determined he was not a danger to others, the court authorized his conditional release subject to standard, as well as other, conditions of release. United States v. Mack, 2014 WL 6965409, at *2 (M.D. Ala. Dec. 8, 2014) (Thompson, J.).

These other conditions include that he adhere to his medication regimen and participate in substance-abuse and mental-health treatment. Id. at *2-*4.  Also, because he engages in negative behaviors when under the influence of alcohol, he is prohibited from consuming such. Id.  Lastly, the court scheduled periodic status conferences to assess whether the conditions of his release should be modified or terminated. Id.

Mack has made considerable progress in conforming to societal expectations of behavior despite his significant intellectual disability.  For a time, he abided by his medication regimen and adhered to his

3

mental-health treatment schedule; his mental-health providers indicate that he shows significant improvement. Recently, Mack, his new wife, and his stepdaughter moved into their own apartment, and he, now on disability benefits, contributes to the household whenever possible.

Mack's disability benefit is currently $ 415 per month. He ordinarily would be entitled to receive a greater amount, but the Social Security Administration has reduced his check due to a $ 9,000 overpayment of benefits that occurred while he was in prison and not entitled to receive benefits. During that time, Mack's mother failed to notify Social Security of his incarceration and instead continued to receive and spend these funds for her own purposes.[1]

---

1. The court understands that, because these overpayments were not Mack's fault, the Federal Defender's Office is seeing if, perhaps with the assistance of private counsel, his full payments can be restored.

4

Most recently, Mack has had two instances of noncompliance with the conditions of his release, both stemming from his use of alcohol and his troubled relationship with his mother and sister.

First, in February 2016, he was out at a nightclub with his mother and sister, and he consumed alcohol. Second, in March 2016, he was arrested by Montgomery City Police on a charge of third-degree domestic violence. He allegedly threatened his wife and made harassing phone calls to her. According to Mack's wife and an investigator, the confrontation stemmed from Mack and his wife's ongoing disagreements about his recent relapse with alcohol and his ongoing contact with his mother and sister.

Mack's wife has discouraged his contact with his mother and sister for two principal reasons. First, Mack has frequent arguments with his mother and sister about his mother's control of his disability benefits. The evidence reflects that, because Mack's mother is

5

the payee for these benefits, Mack must request money from her for his food, mental-health medication, and other living expenses; and that she uses the money for herself--including buying alcohol--instead of for Mack and his family's basic needs. Mack's federal probation officer reports that Mack has often called her to complain that he did not have money to buy his mental-health medication because his mother had refused to distribute the needed funds to him. The probation officer has also testified that she believes the stress of ongoing financial disagreements between Mack and his mother has contributed to Mack's recent relapse with alcohol.[2]

Second, the evidence reflects that Mack's mother and sister's negative influence on him has aggravated his problem with alcohol. Testimony from Mack's wife

---

    2. This court also understands that, given the issues presented by Mack's mother being the named payee for his benefits, the Federal Defender is checking into whether Mack's wife can be named the payee of his benefits in place of his mother.

and an investigator revealed that Mack's mother and sister visit Mack and his wife's home and encourage him to drink alcohol and to accompany them to nightclubs and bars. Mack's wife explained that his mother and sister often drink and engage in disruptive and violent behavior in her and Mack's home. She further explained that, when his mother and sister are not around, Mack does not engage in such negative behavior and that their presence in his home makes it more likely that he will drink.

Moreover, the record makes clear that, when Mack consumes alcohol, he is also less likely to adhere to his mental-health medication regimen; indeed, the evidence reflects that he had not been taking his medication consistently when the two incidences of noncompliance described here occurred. Without this medication, Mack is much more likely to engage in the sort of destructive behaviors evidenced by the recent incidents. For these reasons, while Mack and his wife

7

have reconciled since the incident that led to Mack's recent arrest, his wife has stated that this reconciliation is conditioned on Mack's commitment to avoid his family's negative influences.

Following Mack's arrest, the Alabama Board of Pardons and Paroles held a parole-revocation hearing on the matter. He is on parole for a 2005 first-degree robbery conviction. He is awaiting the Board's decision on whether his parole will be revoked, which would result in his imprisonment. The court is informed that the Board is awaiting this court's determination before deciding whether to revoke Mack's parole.[3]

---

3. Admittedly, in light of this court's earlier findings that, because Mack is intellectually disabled, he is not competent to stand trial and cannot be restored to competency, there is a question as to whether he is mentally competent to participate in the state domestic-violence case or even the related state parole-revocation proceedings. These competency issues are not before this federal court.

## II. Eliminating Factors Contributing to Mack's Noncompliance

The court is confronted with four interrelated issues. First, it is clear that Mack suffers from a significant and permanent intellectual disability. This disability hinders his ability to make sound decisions and makes him more susceptible to the influences of others. Second, he must follow his medication regimen if he is to function successfully in society. Third, he cannot consume alcohol. Mack's wife testified that when he does not drink, everything "run[s] smoothly" as Mack has "a good heart." His consumption of alcohol has contributed to both the nightclub and the domestic-violence incidents described above. Fourth, his mother and sister's influence on him, in light of his intellectual disability and inability to consume alcohol, has been extremely negative.

Based on the evidence in the record that Mack has made significant progress since his release and that

9

his recent setbacks have largely been precipitated by the confluence of negative factors described above, the court concludes that, if Mack's mother and sister can be kept away from him and if he can be kept away from alcohol, he is likely to continue to make progress towards complying with societal expectations and being productive in society.  Thus, the court finds that it is in Mack's best interest to remain on conditional release, but with additional conditions, set forth below, expressly designed to prevent further misconduct.

### III.  New Conditions

The court believes that the following new conditions will go a long way to ensure that Mack is no longer under the negative influence of his mother and sister; that he stays on his medication regimen; and that he stays away from alcohol.

First, the court will prohibit Mack from having any contact with his mother and sister.

Second, because, due to his intellectual disability, Mack is susceptible to the influence of others--in particular, his mother and his sister--the court recognizes that a simple prohibition is not enough. The court will, therefore, require that Mack move from the City of Montgomery, in Montgomery County, Alabama (where his mother and sister reside) to Jemison (where his wife's maternal grandmother lives) in Chilton County, Alabama. The approximately 50-mile distance between Montgomery and Jemison should greatly reduce Mack's mother and sister's access to him. Mack's wife has indicated that her grandmother has agreed to allow both she and Mack to reside with her.

In addition, Mack's wife's grandmother has indicated that she recognizes the challenges Mack faces and that she will enforce her own set of conditions on him for as long as he resides there, including no use

11

of alcohol or drugs and no visitation from Mack's mother and sister.

Third, in addition to the alcohol prohibition, the court has decided to require that Mack submit to an alcohol testing device controlled by the U.S Probation Office.

The court emphasizes that these additional conditions are intended to supplement the current conditions, including requirements that he not use or possess alcohol or drugs, that he regularly report to his probation officer, that he continue to take his medication as prescribed by his physicians, and that he participate in mental-health and substance-abuse treatment.

The court solicited the view of Mack's federal probation officer, as well as those of counsel for all parties, as to whether Mack should be required to move from Montgomery County to Chilton County. The probation officer visited Mack's wife's grandmother's

home in Jemison, Chilton County. While there were no objections to the suitability of the home, the probation officer said that she could neither support nor oppose the move and had to remain neutral because of one concern: that Mack would have to discontinue his relationship with his current mental-healthcare providers and case manager in Montgomery County and reestablish those services in Chilton County. While the court shares the probation officer's concern, it still thinks that Jemison in Chilton County is the better option.

The court is essentially faced with three choices. The first is that Mack remain in Montgomery. This status-quo choice is simply unacceptable. As explained above, there must be a physical distance between Mack and his mother and sister if Mack is to escape their negative influence. The second choice is to incarcerate Mack. This choice is unacceptable as well. Mack is not a danger to others at this time, and

13

his almost childlike susceptibility to the effects of alcohol and to the influence of his mother and sister stems from his intellectual disability. Prison will not cure his disability. Indeed, prison's artificial environment would likely undo all of the progress he has made so far, with the intensive help of his mental-health care providers and case manager, to live independently and, for the most part, crime free in the free world. The third choice is for Mack to move to Jemison. While this is not a perfect choice (for Mack would have to transition from Montgomery County to Chilton County), it is without question the best choice.

The evidence reflects that, in Chilton County, Mack will be able to obtain a new therapist, psychiatrist, and case manager once he relocates, albeit after a transition period; for example, while he can likely be evaluated by nearby mental-health personnel within a few days of his arrival in Jemison,

14

he will not have access to a psychiatrist for at least 90 days. His providers in Montgomery have agreed to coordinate efforts with providers in and around Chilton County to facilitate this transition and ensure that he has a sufficient supply of medication until he sees the new psychiatrist.

Of course, because Mack is currently subject to state parole revocation, this court cannot proceed to impose these conditions unless the State Board of Pardons and Paroles releases Mack back to society. It bears noting that this court does not know what evidence the Board has before it; if the Board, based on that evidence, has suggestions as to other conditions that could be imposed, the court would welcome the Board's suggestions. With more supervision and away from his mother and sister, the court believes that Mack can still become a productive member of society.

***

Accordingly, it is ORDERED that, if defendant Mardedeus Mack's state parole is not revoked and he is released:

(1) Defendant Mack shall remain subject to his current conditions of release.

(2) Defendant Mack is to reside at the home of Faye King, grandmother of defendant Mack's wife, at 61 Dixon Cir., Jemison, Alabama, 35805.

(3) Defendant Mack shall have no contact with his mother, Vernetta Mack, without the prior approval of his supervising probation officer.

(4) Defendant Mack shall have no contact with his sister, Sherika Mack, without the prior approval of his supervising probation officer.

(5) Defendant Mack shall report as soon as possible upon release to the Clanton Mental Health and Substance Abuse Center, 110 Medical Center Drive, Clanton, Alabama, and undergo a new client assessment. He shall participate in mental-health treatment as recommended

by the therapist and as deemed appropriate by the United States Probation Office.  He shall also undergo an assessment to determine whether he qualifies to participate in the Intensive Day Treatment Program at The Hamilton Center, 151 Hamilton Lane, Calera, Alabama, and, if he qualifies, shall participate as recommended by the therapist and as deemed appropriate by the United States Probation Office.

(5) Defendant Mack is subject to random alcohol testing via an alcohol-detection device to be monitored by the United States Probation Office for the Middle District of Alabama.

The clerk of the court is DIRECTED to furnish a copy of this order to the Alabama Board of Pardons and Paroles.

The United States Probation Office is DIRECTED to inform the court of the decision of the Board.

DONE, this the 18th day of May, 2016.

    /s/ Myron H. Thompson_____
    UNITED STATES DISTRICT JUDGE